1
2
3
4
5
6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8    UNITED STATES OF AMERICA,                    Case Nos. CR03-247-RSL
9                              Plaintiff,                    CR04-125-RSL

10                    v.                           ORDER GRANTING
                                                  DEFENDANT'S MOTION
11   JOSEPH VAN CLEAVE,                            FOR COMPASSIONATE
12                             Defendant.          RELEASE

13

14
15          This matter comes before the Court on defendant's "Motion for Compassionate Release

16   Pursuant to 18 U.S.C. § 3582(C)(1)." Dkt. #137.[1]  The Court, having considered the motion, the

17   government's response, defendant's reply, and the remainder of the record, finds as follows:

18   **I.      FACTUAL BACKGROUND**

19          Defendant is a 44-year-old inmate currently detained at the Nevada Southern Detention

20   Center ("NSDC").  In 2003, defendant was charged with and pleaded guilty to conspiracy to

21   steal and sell firearms, and theft of firearms from a federal firearms licensee.  See Dkt. #52.

22   While detained at FDC Seatac pending the resolution of the firearms case, defendant was

23   discovered receiving and distributing methamphetamine at the FDC.  He pleaded guilty to

24   conspiracy to distribute methamphetamine, and to introducing contraband into a federal prison.

25   See Dkt. #7 (CR04-125-RSL).  On May 7, 2004, defendant was sentenced to a term of 15 years

26

27          [1] Defendant has two cases before the undersigned and filed the instant motion in both CR03-247-
     RSL and CR04-125-RSL (Dkt. #19).  For simplicity, unless otherwise indicated, all docket citations in
28   this Order pertain to filings in CR03-247.

1  imprisonment with three years of supervised release for the firearms case (Dkt. #84), and to a
2  term of 19 years and 9 months imprisonment with three years of supervised release for the
3  methamphetamine case, to be served concurrently (Dkt. #16 (CR04-125-RSL)).

4      Defendant is currently scheduled for release from the custody of the Federal Bureau of
5  Prisons ("BOP") on October 2, 2020.  In October 2019, defendant was granted BOP prerelease
6  to the Residential Reentry Center ("RRC") in Seattle.  On January 3, 2020, while at the RRC,
7  defendant was absent for six hours that were not accountable.  Thereafter, he was returned to
8  BOP custody and detained at FDC Seatac.  See Dkt. #137-1 (Ex. 1) at 1.  During defendant's
9  transfer to his designated institution, FCI Berlin, he was routed through NSDC, a private prison
10 that serves as a BOP transit facility.  Defendant has remained at NSDC since BOP ceased
11 inmate transfers due to the COVID-19 pandemic.  Dkt. #137 at 4.

12     **II.    LEGAL FRAMEWORK**

13     The compassionate release statute provides narrow grounds for defendants in
14 "extraordinary and compelling" circumstances to be released from prison early.  See 18 U.S.C.
15 § 3582(c).  The First Step Act of 2018 amended the procedural requirements governing
16 compassionate release.  See id.  Prior to the First Step Act's passage, only the Director of the
17 BOP could bring motions for compassionate release.  The Director rarely filed such motions.
18 See, e.g., United States v. Brown, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019).  Congress
19 amended the statute to allow defendants to directly petition district courts for compassionate
20 release.  As amended, 18 U.S.C. § 3582(c)(1)(A) states,

21         (c) Modification of an imposed term of imprisonment.—The court may not
22         modify a term of imprisonment once it has been imposed except that—

23             (1) in any case—

24                 (A) the court, upon motion of the Director of the Bureau of
25                 Prisons, or upon motion of the defendant after the defendant
                   has fully exhausted all administrative rights to appeal a failure
26                 of the Bureau of Prisons to bring a motion on the defendant's
                   behalf or the lapse of 30 days from the receipt of such a
27                 request by the warden of the defendant's facility, whichever
                   is earlier, may reduce the term of imprisonment (and may
28                 impose a term of probation or supervised release with or

without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction;  . . .

(ii)  . . .

and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission[.]

Prior to passing the First Step Act, Congress directed the Sentencing Commission to promulgate a policy statement defining "extraordinary and compelling reasons" in the compassionate release context.  See 28 U.S.C. § 994(t).  Section 994(t) provides,

The Commission, in promulgating general policy statements regarding the sentencing modification provisions in [18 U.S.C. § 3582(c)(1)(A)], shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

The Sentencing Commission implemented this directive from Congress with a policy statement—U.S.S.G. § 1B1.13.  In relevant part, the policy statement provides,

**Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)**

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the court determines that—

(1)(A) Extraordinary and compelling reasons warrant the reduction; . . .

(2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

**Commentary**

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 3

**Application Notes:**

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) **Medical Condition of the Defendant**—

        (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii)   The defendant is—

            (I)    suffering from a serious physical or medical condition,

            (II)   suffering from a serious functional or cognitive impairment, or

            (III)  experiencing deteriorating physical or mental health because of the aging process

        that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) **Age of the Defendant.**—The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) **Family Circumstances.**—

        (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

        (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 4

1

(D) **Other Reasons.**—As determined by the Director of the
Bureau of Prisons, there exists in the defendant's case an
extraordinary and compelling reason other than, or in
combination with, the reasons described in subdivisions
(A) through (C).

. . .

3. **Rehabilitation of the Defendant.**—Pursuant to 28 U.S.C.
§ 994(t), rehabilitation of the defendant is not, by itself, an
extraordinary and compelling reason for purposes of this policy
statement.

4. **Motion by the Director of the Bureau of Prisons.**—A
reduction under this policy statement may be granted only upon a
motion by the Director of the Bureau of Prisons pursuant to 18
U.S.C. § 3582(c)(1)(A).  The Commission encourages the
Director of the Bureau of Prisons to file such a motion if the
defendant meets any of the circumstances set forth in Application
Note 1.  The court is in a unique position to determine whether
the circumstances warrant a reduction (and, if so, the amount of
reduction), after considering the factors set forth in 18 U.S.C. §
3553(a) and the criteria set forth in this policy statement, such as
the defendant's medical condition, the defendant's family
circumstances, and whether the defendant is a danger to the
safety of any other person or to the community.

This policy statement shall not be construed to confer upon the
defendant any right not otherwise recognized in law[.]

U.S.S.G. § 1B1.13.

The Sentencing Commission has not updated its policy statement to reflect the
amendments of the First Step Act.  <u>See, e.g.</u>, <u>Brown</u>, 411 F. Supp. 3d at 449 n.1 ("As district
courts have noted often this year, the Sentencing Commission has not amended the Guidelines
following the First Step Act and cannot do so until it again has four voting commissioners."
(citations omitted)).  However, the First Step Act renders some provisions of the Commission's
outdated policy statement obsolete, including that compassionate release "may be granted only
upon motion by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13 cmt. n.4; <u>see also</u>
<u>United States v. Haynes</u>, No. 93-CR-1043 (RJD), 2020 WL 1941478, at *11 (E.D.N.Y. Apr. 22,
2020) ("The heart of the matter . . . is that many of these policy statements . . . not only pre-date

1   the [First Step Act] amendment of § 3582(c) but also continue to reference expressly BOP's *pre-*

2   FSA role as exclusive gatekeeper, which of course the [First Step Act] eliminated.").  From this

3   discrepancy emerges a split among district courts as to whether the Court, rather than the BOP

4   Director, can determine pursuant to U.S.S.G. § 1B1.13 cmt. n.1(D) that "there exists in

5   defendant's case an extraordinary and compelling reason other than, or in combination with, the

6   reasons described in subdivisions (A) through (C)."  See United States v. Cantu, 423 F. Supp. 3d

7   345, 350 (S.D. Tex. 2019) (quoting U.S.S.G. § 1B1.13 cmt. n.1(D)).

8       The government asserts that the policy statement set forth in U.S.S.G. § 1B1.13 limits

9   this Court's interpretation of "extraordinary and compelling" circumstances to those set forth in

10  Application Note 1(A) through (C) of the policy statement.  Dkt. #140 at 6-8.  Defendant seeks

11  compassionate release based on his medical conditions, which do not expressly fall within the

12  Sentencing Commission's existing policy statement—defendant is not terminally ill or unable to

13  provide self-care in the environment of a correctional facility.  See U.S.S.G. § 1B1.13 cmt.

14  n.1(A).[2]  Some districts courts, including one within this District, agree with the government's

15  stance.  These courts reason that they lack discretion to look beyond Application Note 1(A)

16  through (C) of U.S.S.G. § 1B1.13, regardless of the fact that the Commission has not updated

17  the policy statement to account for the First Step Act's amendments.  See, e.g., Riley v. United

18  States, No. C19-1522-JRL, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the

19  absence of contrary controlling authority, and given the limited statutory exceptions to the

20  general rule of finality of judgments, this court will continue to follow the guidance of the

21  Sentencing Commission's policy statement limiting the scope of 'extraordinary and compelling

22  reasons' that warrant compassionate release under § 3582(c)(1)."); United States v. Eberhart,

23  2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (same).

24      Defendant argues that the Court can find extraordinary and compelling circumstances

25  under the "catch-all" provision in U.S.S.G § 1B1.13 cmt. n.1(D).  Dkt. #137 at 7-9.  A growing

26  number of district courts agree.  One of the first to do so, United States v. Cantu, concluded that

27

28      [2] Defendant's circumstances also do not fall within Application Note 1's subdivision (B) ("Age of the Defendant") or (C) ("Family Circumstances").  U.S.S.G. § 1B1.13 cmt. n.1.

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 6

"the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief."  423 F. Supp. 3d at 352.  Judge Marmolejo's well-reasoned analysis bears repeating here:

> Although Congress empowered the Commission to issue policy statements regarding the appropriate use of the sentence-modification provisions under § 3582, 28 U.S.C. § 994(a)(2)(C), Congress may override the Commission's policy statements by statute.  Because the Commission's statutory authority is limited to explaining the appropriate use of sentence-modification provisions under the *current* statute, 28 U.S.C. § 994(a)(2)(C), an amendment to the statute may cause some provisions of a policy statement to no longer fall under that authority, as they no longer explain an appropriate use under the amended statute.  For example, at least one provision of the Commission's previously promulgated policy statement is clearly contradicted by the First Step Act's amendments to § 3582: The unamended policy statement still advises that "[a] reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13 cmt. n.4. Yet § 3582 allows the Court to grant a motion for extraordinary and compelling reasons upon a motion by the Director of the Bureau of Prisons or by the defendant. 18 U.S.C. § 3582(c)(1)(A).  The mandate that the Director of the BOP determine additional extraordinary or compelling reasons likewise fails to explain an "appropriate use" under the newly amended § 3582.

> Where two statutes are in conflict, it is nearly axiomatic that the latter enacted is given preference over the former.  That principle has especially strong force here where the Commission derives its power to promulgate the policy statement from Congress.  Statutory construction, however, is a "holistic endeavor" that must consider the entire statutory scheme.  The Court "must read [statutory] words 'in their context and with a view to their place in the overall statutory scheme.'"  The Court's role is "to make sense rather than nonsense out of the *corpus juris*."  The corpus juris here consists of the statute (18 U.S.C. § 3582(c)), the relevant policy statement (U.S.S.G. § 1B1.13), and the statute granting the Commission authority to promulgate that policy statement (28 U.S.C. § 994).

> Before the First Step Act's amendments to § 3582, it made sense that the BOP would have to determine any extraordinary and compelling reasons— only the BOP could bring a motion for a reduction of sentence under § 3582(c)(1)(A).  But defendants no longer need the blessing of the BOP to bring such motions.  The BOP in fact may never weigh in or provide guidance when a § 3582(c) motion is brought by a defendant. Given the

1   changes to the statute, the policy-statement provision that was previously
2   applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and
3   thus does not comply with the congressional mandate that the policy
    statement must provide guidance on the *appropriate use* of sentence-
4   modification provisions under § 3582.

5   The title of the First Step Act section that amends 18 U.S.C.
    § 3582(c)(1)(A) lends further weight to that conclusion.  Titles are useful
6   "when they shed light on some ambiguous word or phrase," because in
7   modern practice "the title is adopted by the legislature."  The title of the
    section of the First Step Act of 2018 that amends 18 U.S.C. § 3582 is
8   "Increasing the Use and Transparency of Compassionate Release."  First
9   Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194 (2018).
    That title supports the reading that U.S.S.G § 1B1.13 cmt. n.1(D) is not
10  applicable when a defendant requests relief under § 3582(c)(1)(A) as
11  amended because it no longer explains an appropriate use of that statute.
    For if the Director of the BOP were still the sole determiner of what
12  constitutes an extraordinary and compelling reason, the amendment's
13  allowance of defendants' own § 3582(c)(1)(A) motions for reduction of
    sentence would be to no avail. Such a reading would contravene the explicit
14  purpose of the new amendments.

15  Id. (internal citations omitted).

16      An increasing number of district courts within and beyond this Circuit have reached the

17  same result regarding the Court's discretion to consider additional factors that might constitute

18  extraordinary and compelling circumstances.  See, e.g., Haynes, 2020 WL 1941478, at *14

19  (collecting cases); United States v. Arreola-Bretado, No. 3:19-cr-03410-BTM, 2020 WL

20  2535049, at *2 (S.D. Cal. May 15, 2020) ("With [Congress's] legislative intent [in passing the

21  First Step Act] in mind and without current guidelines from the Sentencing Commission, the

22  Court views the 2018 Guidelines as persuasive but not binding."); United States v. Kesoyan, No.

23  2:15-cr-236-JAM, 2020 WL 2039028, at *4 (E.D. Cal. Apr. 28, 2020) ("In finding that this

24  Court may order release in a case involving an extraordinary and compelling reason other than,

25  or in combination with, the reasons described in subdivisions (A) through (C), this Court

26  follows a growing list of district courts within this circuit and others, that have concluded they

27  also have discretion under Subdivision (D)." (citations omitted)). Within this District, Judge

28  Bryan recently reached the conclusion that "the listing of examples [in the policy statement]

hardly sets the criteria for a finding of extraordinary and compelling reasons for a sentence reduction, leaving it to the Court to determine what qualifies, after appropriate analysis." United States v. McPherson, No. CR94-5708RJB, 2020 WL 1862596, at *4 (W.D. Wash. Apr. 14, 2020).

Recognizing that the First Step Act did not amend the substantive standard for compassionate release, this Court finds the guidance of U.S.S.G. § 1B1.13 persuasive, but not binding. The Court joins the growing list of district courts in concluding that it has discretion to consider "extraordinary and compelling circumstances" that may exist beyond those explicitly identified by the Sentencing Commission in its outdated policy statement.

### III. DEFENDANT'S CIRCUMSTANCES

#### a. Exhaustion Requirement

Before the Court can consider the merits of defendant's motion, it must determine whether defendant has met the statutory exhaustion requirement for compassionate release. See 18 U.S.C. § 3582(c)(1)(A). Defendant represents that he requested the relevant BP-9 application from NSDC staff but was informed that he could not make a compassionate release request because he is being held at a private, non-BOP facility. See Dkt. #137 at 6. Defendant has demonstrated that neither the warden at NSDC nor the BOP will consider his request. The government agrees that defendant's compassionate release requests will not be considered. See Dkt. #140 at 3. In these circumstances, no viable administrative remedy is available to defendant.

Further, on April 7, 2020, defendant's father sent letters to the wardens of FDC Seatac, NSDC, and FCI Berlin, requesting that the BOP file a motion with the Court for defendant's compassionate release. See Dkt. #137-3 (Ex. 3). More than 30 days have elapsed since those requests were received. See Dkt. #137-4 (Ex. 4); see also 18 U.S.C. § 3582(c)(1)(A). Finding any further attempt to exhaust administrative remedies would be futile, the Court will consider the merits of defendant's motion.

**b.  "Extraordinary and Compelling" Circumstances**

Defendant's motion for compassionate release is based primarily upon his heightened risk of developing serious complications if he contracts COVID-19 while incarcerated at NSDC. The Court need not reiterate the widely-known information regarding the symptoms of COVID-19 and the devastating global impact of the virus in recent months.  COVID-19 has created unprecedented challenges for federal prisons, where inmate populations are large and close contact between inmates is unavoidable.  As of May 29, 2020, 1,610 federal inmates and 189 BOP staff have active, confirmed positive COVID-19 test results.  See COVID-19 Coronavirus, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited May 29, 2020).  At least sixty-six federal inmates have died from the virus in the past two months.  Id.  Defendant asserts, and the Court has no reason to disbelieve, that there is no official reporting of COVID-19 cases for NSDC, a non-BOP facility.  Dkt. #137 at 4.  Defendant indicates that NSDC staff have announced to inmates that at least one inmate at the detention center has tested positive for the virus.  Id. at 4-5.

The Court does not discount the dangers associated with COVID-19 nor the difficulties prisons face in preventing and containing outbreaks.  However, the Court does not believe that "extraordinary and compelling" circumstances are established by "the mere elevated risk of contracting a pandemic virus in prison, even if such a higher risk exists."  Riley, 2020 WL 1819838, at *7.  Therefore, the question is whether defendant's additional circumstances support compassionate release.

A review of defendant's BOP medical records confirms that he suffers from hypothyroidism and sarcoidosis.  See Dkt. #137-2 (Ex. 2).  Defendant also has a history of smoking.  Id.  Sarcoidosis is a rare inflammatory disease "that can affect multiple organs of the body, most commonly the lungs."  See Sarcoidosis, Am. Lung. Assoc., https://www.lung.org/lung-health-diseases/lung-disease-lookup/sarcoidosis (last visited May 29, 2020).  At present, there is little concrete data regarding outcomes for COVID-19 infections in individuals with sarcoidosis.  This is likely due to the relative rarity of sarcoidosis and the rapidly evolving nature of medical data surrounding COVID-19.  See People Who Are at High

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 10

Risk for Severe Illness, Ctrs. for Disease Ctrl. & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited May 29, 2020) ("COVID-19 is a new disease and there is limited information regarding risk factors for severe disease.").  However, the CDC has identified those with chronic lung disease and other chronic illnesses as at high risk for developing severe illness from COVID-19.[3]  Id.  Further, the British Thoracic Society has recommended that sarcoidosis patients be listed as high risk for developing COVID-19 complications.  COVID-19: Identifying Patients for Shielding, British Thoracic Soc., https://brit-thoracic.org.uk/about-us/covid-19-identifying-patients-for-shielding/ (last visited May 29, 2020).

Defendant is in the unique position of having less than five months of imprisonment remaining on a nearly twenty-year sentence.  His health conditions place him at heightened risk for serious complications if he contracts COVID-19 at NSDC—a severe case of the virus could even be fatal.  Considering the defendant's health, his risk of contracting COVID-19 while incarcerated, and the relatively modest sentencing reduction sought, the Court finds that "extraordinary and compelling reasons" support defendant's compassionate release.[4]  18 U.S.C. § 3582(c)(1)(A)(i).

### c.  Additional Considerations

Before the Court can grant defendant's request for compassionate release, it must also find that he "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  U.S.S.G. § 1B1.13.  The government argues that defendant's record

---

[3] The CDC and others have identified smoking as a potential COVID-19 risk factor.  See, e.g., Ctrs. for Disease Control & Prevention, People Who Are At High Risk for Severe Illness (noting that smoking may lead a person to be immunocompromised and at heightened risk).

[4] The government expresses concern that, by granting defendant's motion, the Court will pave the way for younger inmates with "unconfirmed" COVID-19 risk factors to be eligible for compassionate release.  See Dkt. #140 at 10.  The Court disagrees.  Its consideration of "extraordinary and compelling circumstances" in future motions for compassionate release will be fact-intensive and dependent on the specific circumstances that the moving defendant faces.

precludes such a finding.  See Dkt. #140 at 10-11.[5]  The Court disagrees.  The offenses for

which defendant has served a lengthy term of imprisonment are very serious.  However, they

occurred nearly two decades ago.  The Court has reviewed defendant's prison disciplinary

record, which is imperfect, but not egregious.  See, e.g., Dkt. #137-1 (Ex. 1) at 1 (refusal to

return to general population from solitary confinement); id. (possession of stolen, non-hazardous

government property), id. at 2 (verbal threats); id. (possession of prison-made intoxicants); id. at

3 (fist fight with another person).  Defendant appears to have a supportive family, and will live

with his father in Edmonds, Washington if released.  Dkt. #137 at 11.  Further, last year,

defendant was released into the community on prerelease.  He appears to have engaged in some

prosocial behavior during that time, including obtaining a driver's license and insurance, and

completing orientation for a Local 242 laborers' union.  Dkt. #137 at 5.  Defendant failed to

account for six hours at the RRC while on prerelease and was accordingly returned to BOP

custody.  While serious, the nature of this noncompliance was nonviolent.

    In addition, prior to granting compassionate release, the Court must assess whether a

sentence reduction to time served is consistent with the sentencing factors set forth in 18 U.S.C.

§ 3553(a).  See 18 U.S.C. § 3582(c)(1)(A).  Section 3553(a) requires the Court to "impose a

sentence sufficient, but not greater than necessary, to comply with the purposes set forth in

paragraph (2)," which requires that a sentence reflect the seriousness of and provide just

punishment for the offense.  Id.  Again, the offenses that led to defendant's current term of

imprisonment are very serious.  But he has served a lengthy sentence for those offenses, having

remained in custody since 2003.  After spending much of his adult life incarcerated, defendant

has less than five months remaining on his sentence.

    Considering these circumstances, the Court intends to convert defendant's short

remaining term of imprisonment into a term of home detention as an additional condition of

---

[5] The government also speculates that Van Cleave might fail to comply with Washington state social distancing measures, and accordingly endanger the community's health.  Dkt. #140 at 11.  The Court does not view this as a basis for denial of defendant's motion.  Defendant's health places him at high risk for COVID-19, and he is incentivized to engage in social distancing for the protection of himself and his 70-year-old father, with whom he will stay upon release (see Dkt. #141 at 8).

ORDER GRANTING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE - 12

supervised release.  The Court is satisfied that releasing defendant to home confinement less than five months before his existing release date will (1) not endanger to the safety of any other person or the community within the meaning of 18 U.S.C. § 3142(g) and (2) satisfy the objectives of 18 U.S.C. § 3553(a).

## IV.    CONCLUSION

For all the foregoing reasons, defendant's Motion for Compassionate Release (Dkt. #137)[6] is GRANTED.

IT IS HEREBY ORDERED that defendant's custodial sentence be reduced to time served and that the remaining term of incarceration be converted into four (4) months of home detention as an additional condition of supervised release.  All other provisions of sentencing remain as previously set.  Upon completion of the term of home detention, defendant shall begin serving the three-year term of supervised release previously imposed by the Court.

IT IS FURTHER ORDERED that defendant be released from the custody of the Bureau of Prisons immediately but no later than within 24 hours of the entry of this Order.  Defendant shall contact the United States Probation Office in Seattle within 24 hours of his release and follow its instructions.

The Clerk of Court is directed to enter an amended judgment in accordance with this Order.

DATED this 29th day of May, 2020.

Robert S. Lasnik
United States District Judge

---

[6] See also Dkt. #19 in CR04-125-RSL.